TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division
LANA MORTON OWENS (Cal. Bar No. 233831)
Assistant United States Attorney
Deputy Chief, National Security Division
JENNA W. LONG (Cal. Bar. No. 332192)
Assistant United States Attorney
National Security Division
SEBASTIAN BELLM (Cal. Bar No. 359407)
Assistant United States Attorney
General Crimes Section, Criminal Division
        1500 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone:  (213) 894-8692/3547/0119
        Facsimile:  (213) 894-2927
        E-mail:     lana.owens@usdoj.gov
                    jenna.long@usdoj.gov
                    sebastian.bellm@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-CR-731(B)-JFW-5 |
|---|---|
| Plaintiff, | GOVERNMENT SENTENCING POSITION FOR DEFENDANT JESUS GONZALEZ HERNANDEZ, JR. |
| v. | |
| ADAM CHARLES PALERMO ET AL., | Hearing Date: July 20, 2026 |
| Defendants. | Hearing Time: 8:00 a.m. |
| | Location:    Courtroom of the Hon. John F. Walter |

        Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jenna W. Long, Lana Morton Owens, and Sebastian Bellm, hereby files its sentencing position for defendant Jesus Gonzalez Hernandez, Jr.

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 7, 2026        Respectfully submitted,

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division

_____/s/ *Sebastian Bellm*_____
JENNA W. LONG
LANA MORTON OWENS
SEBASTIAN BELLM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                <u>PAGE</u>

**Contents**

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   DEFENDANTS OFFENSE.............................................1

III.  GUIDELINES CALCULATION........................................3

IV.   GOVERNMENT'S RECOMMENDED SENTENCE.............................4

      A.    Nature and Circumstances of the Offense..................4

      B.    Defendant's History and Characteristics..................5

      C.    Need for Deterrence, to Protect the Public, and to
            Promote Respect for the Law..............................5

      D.    Terms of Probation.......................................5

      E.    Forfeiture and Special Assessment........................7

V.    CONCLUSION....................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Jesus Gonzalez Hernandez Jr. (hereinafter, "defendant") joined a civil disorder that erupted in downtown Los Angeles on June 8, 2025. Defendant, knowing that officers with the California Highway Patrol ("CHP") were carrying out their official duties on Highway 101 (the "101"), threw more than five rocks from Aliso Street towards the officers intending and attempting to inflict injury on them.  For his conduct, defendant pleaded guilty to a single-count First Superseding Information charging him with Assault on a Person Assisting a Federal Officer, in violation of 18 U.S.C. § 111(a)(1).

The government agrees with the United States Probation and Pretrial Services Office's ("Probation") Pretrial Services Report ("PSR"), including the United States Sentencing Guidelines calculations.  The government respectfully recommends a sentence of three years' probation and the mandatory $25 special assessment.[1]

### II.   DEFENDANTS OFFENSE

In early June 2025, federal law enforcement officials began conducting immigration enforcement operations throughout the Los Angeles, California area. (Complaint filed in 2:25-MJ-6126-DUTY, Dkt. No. 1, also appearing at Dkt. No. 155-2, ¶¶ 4, 9.) During those operations, protests occurred in and around downtown Los Angeles, California. (Id.) While many of the protestors peacefully exercised their First Amendment rights, some individuals directly engaged in

---

[1] Restitution is not covered in the defendant's plea agreement. The parties are in the process of attempting to reach an agreement on restitution and/or fine.

violent actions and the assault of law enforcement officers. (Id. ¶¶ 4, 9-11.)

Many of those actions occurred during a civil disorder as defined by 18 U.S.C. § 232(1), during which federal law enforcement and CHP officers responded to the scene. (Plea Agreement ¶ 10, Dkt. No. 238; Presentence Investigation Report filed June 15, 2026 (hereinafter "PSR") ¶¶ 17-22.) After protesters walked onto and blocked all lanes of southbound traffic on the 101, CHP officers attempted to re-open the highway to traffic. (Id.) At this time, a large group of people amassed on the Main Street overpass of the 101, as well as Aliso Street between Main Street and Los Angeles Street. (Id.) During the civil unrest on June 8, 2025, multiple CHP vehicles were damaged by rocks, debris, thrown scooters, and lit on fire, while CHP officers had to remain under the overpass for safety. (Id.) The photograph below depicts this civil disorder.



(Dkt. 155-2 ¶ 12.)

Defendant was amongst the group engaging in this civil disorder. (Plea Agreement ¶ 9.) Beginning at approximately 6:40 p.m., defendant

collected rocks from other areas and brought them closer to the railing overlooking the officers on the 101 below.  Defendant then picked up each rock and threw it at the officers taking cover beneath the Main Street overpass on the 101 below. (Id.) Defendant threw several--meaning at least five--rocks down at the officers. Photographs show the defendant throwing a rock that was the size of his hand. (PSR ¶ 22.)

The June 8 civil disorder and defendant's conduct had a solemn and profound impact on the victims that day.  A sergeant in the California Highway Patrol with nearly three-decades in law enforcement wrote a statement about how this incident stood apart and the impact it had on him and his son.  (PSR at ¶ 25-27.) He recalled how a "larger piece of concrete struck [his] windshield directly in front of [his] face […] glass shattered all over [his] face and body." (Id.) Shards of glass became lodged in his face, drawing blood. (Id.) The civil disorder left countless members of law enforcement shaken and traumatized. (Id.) On May 4, 2026, defendant entered a plea of guilty to the single-count First Superseding Information pursuant to a plea agreement. (Dkt. Nos. 238, 255.)

**III.  GUIDELINES CALCULATION**

The parties and Probation agree that for defendant's offense of assaulting a person assisting a federal officer, defendant's base offense level is 10 under U.S.S.G. § 2A2.4(a). (Plea Agreement ¶ 11; PSR ¶¶ 35-46.) Because defendant used a dangerous weapon in the commission of this offense—-namely multiple large rocks that defendant knew could cause death or serious bodily injury to the officers—-a three-level increase applies under U.S.S.G. § 2A2.4(b)(1)(B). (Id.) After a two-level reduction in offense level

3

due for defendant's timely acceptance of responsibility under U.S.S.G. § 3E1.1(a), defendant's total offense level is 11. (Id.)

Defendant is in criminal history category I with zero criminal history points. (PSR ¶¶ 51-52.) U.S.S.G. § 5A. Despite defendant's lack of criminal history points, defendant is ineligible for the zero-point offender reduction under U.S.S.G. § 4C1.1 because defendant used violence[2] in connection with the offense. U.S.S.G. § 4C1.1(3).

With a total offense level of 11 and a criminal history category of I, the applicable Guidelines range is 8 to 12 months' imprisonment. U.S.S.G. § 5A.

**IV.   GOVERNMENT'S RECOMMENDED SENTENCE**

The government recommends that the Court sentence defendant to a below-Guidelines' sentence of three years probation and the mandatory $25 special assessment. This sentence is appropriate, reasonable, and not greater than necessary to account for the factors the Court must consider under 18 U.S.C. § 3553(a).

**A.   Nature and Circumstances of the Offense**

Defendant pleaded guilty to misdemeanor assault on a person assisting a federal officer. Defendant admits to carrying multiple rocks to the railing overlooking the 101 and then throwing them at CHP officers on the highway below who were seeking safety under the

---

[2] "Used violence" is not defined by the Guideline or its application notes. "Crime of violence" as defined by U.S.S.G. § 4B1.2(a) includes any crime including the "use, attempted use, or threatened use of physical force against the person of another." Here, defendant threw rocks at CHP officers "intending and attempting to inflict injury on them, and intending to threaten them and to demonstrate his ability to inflict injury on them." (Plea Agreement ¶ 9.) Defendant further "knew the rocks thrown were capable of causing death or serious bodily injury to the officers." (Id.)

cover of the overpass. Multiple CHP vehicles were destroyed during the civil disorder. In addition to the damage to the vehicles, defendant further admits that he knew the rocks were capable of causing death or serious bodily injury to the officers themselves. The offense is serious and would traditionally warrant a Guidelines sentence; however, in light of the totality of the circumstances, the government submits that a probationary sentence is appropriate in this case.

### B.    Defendant's History and Characteristics

The instant offense will be defendant's first criminal conviction, which is accounted for in his criminal history category. Defendant was simultaneously charged by the state for Assault with a Deadly Weapon and sentenced to 120 days jail and three years' probation in a California state proceeding.  (PSR ¶ 50.)  The court should consider defendant's punishment in the state case in imposing the below-Guidelines sentence sought by the government. A sentence of a three year term of probation correctly balances defendant's history and characteristics with the nature and circumstances of the offense.

### C.    Need for Deterrence, to Protect the Public, and to Promote Respect for the Law

A sentence including a three-year term of probation will sufficiently promote respect for the law and deter defendant or others from engaging in the same dangerous behavior in the future. On June 8, 2025, defendant could have peacefully protested, as many did; but instead, defendant threw rocks at CHP officers and vehicles.

### D.    Terms of Probation

Here, because the offense is a misdemeanor, the Court can sentence defendant up to five years' probation.  18 U.S.C.

§ 3561(c)(2).  For the reasons stated above, a three-year term of probation is an appropriate sentence after considering the applicable § 3553(a) factors.  District courts have wide latitude in imposing conditions of supervised release. United States v. Blinkinsop, 606 F.3d 1110, 1118 (9th Cir. 2010); United States v. Weber, 451 F.3d 552, 557 (9th Cir. 2006). A sentencing court even has broad discretion to impose conditions of supervised release not named by statute.  18 U.S.C. § 3583(d) (district court may impose "any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate").

This Court's supervision will be necessary to hold defendant accountable for his actions and to effectively protect the public from any future crimes of defendant.  Pursuant to the plea agreement, defendant agrees to and does not oppose the imposition of the following conditions of probation or supervised release:

(1) Perform 120 hours of community service as directed by the United States Probation and Pretrial Services Office.

(2) Participate in a program of drug or alcohol abuse treatment, including during testing and counseling, as directed by the United States Probation and Pretrial Services Office. The program shall consist of outpatient treatment but may be modified to inpatient treatment at the discretion of the United States Probation and Pretrial Services Office. Hernandez agrees to, and shall sign waivers necessary to effectuate, reciprocal release of information between probation officer and the treatment provider and Hernandez may be required to contribute to costs of services rendered in an amount to be determined by the United States Probation and Pretrial Services Office, based on ability to pay.

(3) Participate in mental health treatment, including counseling, as directed by the United States Probation and Pretrial Services Office. Hernandez agrees to, and shall sign waivers necessary to effectuate, reciprocal release of information between probation officer and the treatment

6

provider and Hernandez may be required to contribute to costs of services rendered in an amount to be determined by the United States Probation and Pretrial Services Office, based on ability to pay.

(4) Hernandez shall not knowingly come within 100 feet of a federal building or within 100 feet of a federal law enforcement officer engaged in the performance of his or her official duties for an unlawful purpose or with the intent to protest, harass, or cause a disturbance, without prior permission of Pretrial Services. Notwithstanding the prior sentence, Hernandez is permitted to enter a federal building for legitimate business or governmental purposes. However, Hernandez must adhere to the building's rules and regulations at all times and follow the commands of any federal employee or officer, and Hernande must leave the building immediately, and without a disturbance, if directed by a federal employee or officer, or those assisting federal employees or officers.

**E.    Forfeiture and Special Assessment**

Defendant must pay a mandatory $25 special assessment for each count of conviction. (PSR ¶ 100.) The indictment did not include criminal forfeiture allegations, and the government is not pursuing criminal forfeiture.

//

//

7

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests a sentence of three years probation and a $25 special assessment. The government submits that this sentence is "sufficient, but not greater than necessary, to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2)."  18 U.S.C. § 3553(a).

Dated: July 7, 2026                     Respectfully submitted,

                                        TODD BLANCHE
                                        Acting Attorney General

                                        BILAL A. ESSAYLI
                                        First Assistant United States
                                        Attorney

                                        IAN V. YANNIELLO
                                        Assistant United States Attorney
                                        Chief, National Security Division


                                            /s/ *Sebastian Bellm*
                                        JENNA W. LONG
                                        LANA MORTON OWENS
                                        SEBASTIAN BELLM
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA